IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KRISTIN I.,

    *Plaintiff,*

vs.

KILOLO KIJAKAZI[1]
Acting Commissioner of the Social Security Administration,

    *Defendant.*

Case No. 20-01182-EFM

**MEMORANDUM AND ORDER**

Plaintiff Kristin I. seeks judicial review of a final decision by Defendant, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act"). Plaintiff alleges that the administrative law judge ("the ALJ") erred by failing to include various mental limitations assessed by Dr. Bowman, one of Plaintiff's examining physicians, in her finding of Plaintiff's residual functional capacity ("RFC"). Plaintiff contends this failing leaves the ALJ's decision unsupported by substantial evidence. Because the ALJ did not properly incorporate Dr. Bowman's opinion regarding Plaintiff's limited

---

[1] On July 9, 2021, Kilolo Kijakazi was named the Acting Commissioner of Social Security. She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d).

ability to adapt to changes in work-related tasks and routine in her residual functional capacity finding, the Court finds the decision was not supported by substantial evidence and therefore reverses the order of the Commissioner and remands the case for further consideration.

## I.     Factual and Procedural Background

Plaintiff alleges she became disabled in April 2015.  Her alleged disability encompassed many physical and mental symptoms, but those relevant to this review are Plaintiff's impaired concentration, persistence, and inability to adapt to changes in work-related tasks and routines, all brought on by Plaintiff's unspecified depressive and anxiety disorders.  In March 2016, Plaintiff applied for disability insurance benefits and supplemental insurance income under the Act.  She received an initial denial on March 9, 2017, and her request for reconsideration was denied August 9, 2017.  Plaintiff thereafter requested a hearing on her application, which was granted.

In the order that followed Plaintiff's hearing, the ALJ considered the opinion of, as relevant here, Dr. Todd Bowman.  Dr. Bowman conducted a mental status examination of Plaintiff as part of her original application, and concluded his examination with the following summary statement:

> The claimant's judgment and reasoning were not significantly impaired and would be adequate to make simple work related decisions, although claimant may have difficulty adapting to changes in routines and problem solving accordingly. Claimant presented with mild to moderate impairments related to understanding and memory, sustained concentration and persistence that may interfere with gainful employment at this time. Claimant presented with an interpersonal style that may inhibit her from interacting appropriately with coworkers and supervisors within a work environment. She presented with moderate impairment in following simple instructions (ie serial counting), and slowed processing speed. Thus, she would perform best with repetitive tasks and may have difficulty with tasks requiring frequent changes or the need for adaptation. Claimant would likely be unable to perform in complex or moderately demanding work environments, but may be able to work in an environment with simple demands.[2]

---

[2] SSA R., Doc. 14-7, p. 490.

The ALJ accorded this opinion "great weight,"³ and incorporated it into her finding of Plaintiff's mental RFC. Based on this, following the appropriate five-step sequential evaluation process, the ALJ concluded Plaintiff had the RFC to "understand, remember, and carry out simple instructions, and she can have occasional [public]⁴ and supervisor contact."⁵ The parties agree that this RFC is best read as a limitation to unskilled work.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work based on her RFC. At step five, the ALJ concluded, based on the testimony of a vocational expert, that Plaintiff could perform other work existing in significant numbers in the national economy. The ALJ therefore concluded that Plaintiff was not disabled. Plaintiff requested review of this decision from the Appeals Council. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff now seeks review of the ALJ decision from this Court.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."⁶ The Court must therefore determine whether the Commissioner made factual findings that are supported by substantial evidence in the record and

---

³ SSA R., Doc. 14-2, p. 27.

⁴ The Court agrees with the Commissioner that a typographical error led to the omission of "public" from the ALJ's RFC finding. The Court concludes this is a "mere scrivener's error" and did not in any way affect the outcome of the case. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009).

⁵ SSA R., Doc. 14-2, p. 22.

⁶ 42 U.S.C. § 405(g).

applied the correct legal standard to those factual findings.[7] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[8] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[9]

"An individual is under a disability only if she can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[10] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[11]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[12] The steps are designed to be followed in order.[13] If it is determined, at any step of the process, that the claimant is or is not disabled, further evaluation is unnecessary.[14]

---

[7] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005))0.

[8] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[9] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[10] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[11] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002); 20 C.F.R. § 416.920 (2005)).

[12] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[13] *Barkley*, 2010 WL 3001753, at *2.

[14] *Id.*

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments.[15] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[16]

Upon determining the claimant's residual functional capacity, the Commissioner turns to steps four and five, which require the Commissioner to determine whether the claimant can either perform past relevant work or can generally perform other work that exists in the national economy, respectively.[17] The claimant bears the burden in steps one through four to prove an impairment or combination thereof that prevents performance of past relevant work.[18] The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, based on the claimant's RFC and other factors, the claimant could perform other work in the national economy.[19]

### III.   Analysis

On review, Plaintiff claims the ALJ erred in her finding of Plaintiff's mental RFC. In particular, Plaintiff claims that, though the ALJ accorded "great weight" to Dr. Bowman's opinion,

---

[15] *Lax*, 489 F.3d at 1084 (citations omitted).

[16] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)).

[17] *Id.* (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[18] *Lax*, 489 F.3d at 1084 (citation omitted).

[19] *Id.* (citation omitted).

she failed to account in Plaintiff's RFC for several credible limitations assessed by Dr. Bowman. These limitations are that Plaintiff: (1) "presented with mild to moderate impairments related to . . . sustained concentration and persistence that may interfere with gainful employment at this time," (2) "may have difficulty adapting to changes in routines and problem solving accordingly," and (3) "may have difficulty with tasks requiring frequent changes or the need for adaptation."[20] Plaintiff alleges the failure to include these limitations in her RFC or explain their exclusion requires remand. The Court examines each limitation in turn, combining the second and third under one heading as they present the same issues for analysis.

### A.     Mild-to-Moderate Impairments in Sustained Concentration and Persistence

The ALJ properly incorporated Dr. Bowman's limitation that Plaintiff has mild to moderate impairments with sustained concentration and persistence by assessing Plaintiff an RFC of unskilled work. The Tenth Circuit has held that an ALJ may account for some moderate limitations by limiting a claimant to unskilled work.[21] In this case, the ALJ explicitly considered Dr. Bowman's finding that Plaintiff was limited in her ability to sustain concentration and pace, but found that Plaintiff was able to participate in some activities that require at least some concentration and persistence, such as reading, watching television, attending and participating in church, and cooking. As such, the ALJ concluded limiting Plaintiff to simple, unskilled work with repetitive tasks would fully account for this limitation.

---

[20] SSA R., Doc. 14-7, p. 490.

[21] *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he ALJ accounted for Vigil's moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work.").

Though the Tenth Circuit has recognized that a limitation to unskilled work will not always fully account for a claimant's limitations,[22] such situations are more likely to exist when a claimant's impairment goes to the heart of what is required for unskilled work, as discussed below, or a claimant has "various functionally distinct mental limitations" that cannot be addressed by a limitation to unskilled work.[23]  Neither issue is present here.  Concentration is "not critical" for unskilled work,[24] and Plaintiff presents with a mild-to-moderate, discrete impairment in concentration that the ALJ fully addressed in discussing Dr. Bowman's opinion and by limiting Plaintiff to an RFC of unskilled work. Accordingly, the ALJ did not err by failing to explicitly mention this impairment in Plaintiff's mental RFC.

**B.      Difficulty in Adapting to Changes**

By contrast, the ALJ erred in failing to properly consider the limitations Dr. Bowman assessed in Plaintiff's ability to adapt to changes in work-related tasks and routine.  The ALJ found that Plaintiff had a mental RFC that limited her to unskilled, simple work.  "Unskilled work," according to the Social Security Administration, "include[s] the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to *deal with changes* in a routine work setting."[25] Notably, the ALJ's assessed RFC covered Plaintiff's ability to understand, remember and carry

---

[22] *Id.* (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n. 3 (10th Cir. 2012)).

[23] *Chapo*, 682 F.3d at 1290 n. 3.

[24] Social Security Administration Disability Insurance Program Operation Manual System (POMS) DI 25020.010(B)(3)(d), https://secure.ssa.gov/poms.nsf/lnx/0425020010.

[25] SSR 85-15, 1985 WL 56857, at *4 (emphasis added).  Because unskilled work requires a person to have the ability to adapt to changes, this is one of those cases where a limitation to unskilled work does not inherently address Plaintiff's impairment.  *See Vigil*, 805 F.3d at 1204.

out simple instructions, as well as her interaction with supervisors and the public, but a finding regarding Plaintiff's ability to adapt is absent from the RFC.

This omission would not necessarily be problematic by itself, but it becomes so when considering the medical opinion of Dr. Bowman. Dr. Bowman opined that Plaintiff "may have difficulty adapting to changes in routines and problem solving accordingly" and "may have difficulty with tasks requiring frequent changes or the need for adaptation."[26] This opinion conflicts with the assessed RFC of unskilled work because, as noted above, unskilled work requires that plaintiff have the ability to "deal with changes in a routine work setting."[27] The ALJ was required to explain this conflict and, particularly, "why the opinion was not adopted."[28] The ALJ failed to do so here. Instead, the ALJ accorded Dr. Bowman's opinion "great weight" but failed to address the credible limitations he assessed regarding Plaintiff's impaired ability to adapt to changes.[29]

This Court has reversed the decision of an ALJ in similar circumstances. In *Schlein v. Berryhill*,[30] this Court reversed the decision of an ALJ and remanded for further proceedings when the ALJ afforded "considerable weight" to the opinions of two consulting doctors without explaining why he failed to include "the consultants' opinion[s] regarding Plaintiff's ability to adapt" in the plaintiff's RFC.[31] Similarly, in *Lodwick v. Astrue*,[32] this Court reversed the decision

---

[26] SSA R., Doc. 14-7, p. 490.

[27] SSA 85-15, 1985 WL 56857, at *4.

[28] SSR 96-8p, 1996 WL 374184, at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1).

[29] SSA R., Doc. 14-2, p. 27.

[30] 2018 WL 6042863 (D. Kan. 2018)

[31] *Id.* at *4.

[32] 2011 WL 6253799 (D. Kan. 2011)

of an ALJ who gave substantial weight to the opinions of a doctor but failed to include in the RFC, without explanation, limitations assessed by that doctor.[33] Additional cases from this Court counsel in favor of a similar result.[34]

The Commissioner argues that the ALJ's RFC *is* consistent with the limitations assessed by Dr. Bowman. In support of this position, the Commissioner cites *Chavez v. Colvin*,[35] which the Commissioner believes stands for the proposition that an ALJ can incorporate a doctor's opinion in a claimant's RFC by focusing on the doctor's "overall assessment," without needing to recite each limitation assessed by that doctor.[36] *Chavez*, however, is factually distinct.

In *Chavez*, unlike the instant case, the doctor who assessed the plaintiff's limitations that were at issue noted those limitations in Section I of a mental residual functional capacity assessment ("MRFCA") form.[37] Some discussion of the MRFCA is necessary to explain why this distinction matters. In an MRFCA, a doctor fills out three distinct sections to evaluate a claimant.[38] Section I allows the doctor to record summary conclusions, which include notations on the claimant's specific limitations.[39] Section II gives room for remarks, or evidence needed to evaluate

---

[33] *Id.* at *5.

[34] *See Washington v. Colvin*, 2014 WL 4145547, at *3 (D. Kan. 2014); *Murray v. Colvin*, 2014 WL 4113330, at *6 (D. Kan. 2014); *Moore v. Astrue*, 2011 WL 1885940, at *4 (D. Kan. 2011).

[35] *Chavez v. Colvin*, 654 F. App'x 374 (10th Cir. 2016).

[36] *Id.* at 375 (10th Cir. 2016) ("While the ALJ didn't parrot Dr. Lev's exact descriptions of Ms. Chavez's limitations, the ALJ did specifically note his overall assessment that Ms. Chavez 'retain[ed] the capacity to do simple tasks.' " (brackets in original) (citation omitted)).

[37] *Chavez v. Colvin*, 2015 WL 12861150, at *7 (D.N.M. 2015), *aff'd*, 654 F. App'x 374 (10th Cir. 2016).

[38] Social Security Administration Disability Insurance Program Operation Manual System (POMS) DI 24510.060, https://secure.ssa.gov/poms.nsf/lnx/0424510060; *see also Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015).

[39] POMS DI 24510.060.

particular items in Section I.[40] Finally, Section III allows the doctor to provide an evaluation of the claimant's RFC, explaining and incorporating the limitations and other information provided in Section I.[41]

When the Tenth Circuit in *Chavez* explained that the ALJ need not "parrot" every limitation described by the doctor, it meant that the ALJ need not always explicitly address every limitation contained in Section I of the MRFCA because, in considering the doctor's Section III RFC, the ALJ has already incorporated the limitations in Section I.[42] The doctor, if using the MRFCA properly, has incorporated the Section I limitations into her Section III RFC, so the ALJ need not get bogged down examining and responding to every limitation contained in Section I. By relying on the doctor's RFC in Section III, the ALJ *has already* incorporated the limitations described in Section I.[43]

The same cannot be said, however, when the doctor's assessment is not in the form of an MRFCA. Without clear structural guidelines like those in an MRFCA, there is no assurance that a doctor has incorporated earlier discussed limitations in later conclusions. Without such an assurance, an ALJ who relies solely on a doctor's conclusions in determining a claimant's RFC does so at the risk of leaving out the claimant's credible impairments. In the instant case, the ALJ relied on Dr. Bowman's conclusion that Plaintiff "may be able to work in an environment with

---

[40] *Id.*

[41] *Id.*

[42] Other courts in this Circuit have read *Chavez* similarly. *See Sandoval v. Berryhill*, 2017 WL 4772412, at *7 (D.N.M. 2017) (explaining that when a "Section III narrative . . . inherently accounts for moderate limitations identified in Section 1," the ALJ "need not 'parrot' a consultant's 'exact description of limitations.' " (quoting *Chavez*, 654 F. App'x at 375)).

[43] Of course, the ALJ cannot "turn a blind eye to moderate Section I limitations." *Carver*, 600 F. App'x at 619. But assuming the doctor has properly incorporated the Section I information into the Section III RFC, the ALJ can rely on that RFC without explicitly considering every item in Section I.

simple demands" to determine that Plaintiff's mental RFC allows her to perform unskilled, simple work.[44] However, there is no assurance that Dr. Bowman, in giving this opinion, incorporated the earlier assessed limitations on Plaintiff's ability to adapt to changes, a skill that is required even in unskilled, simple work environments.[45] Therefore, the ALJ violated SSR 96-8p[46] by failing to explain why she did not include those limitations in Plaintiff's RFC.

The Commissioner also attempts to justify the ALJ's failure to explain the exclusion of Plaintiff's credible limitations from the RFC by arguing that an ALJ need not address "speculative opinions." The Commissioner focuses on Dr. Bowman's use of the word "may," apparently contending that medical opinions making use of the occasional modal verb should be resolutely ignored.[47] But this Court has never adopted such a hard and fast rule. Rather, ALJs are free to ignore those speculative medical opinions in which the doctor fails to assign functional limitations.[48] In this case, Dr. Bowman assigned clear functional limitations to Plaintiff's ability to adapt to changes in work-related tasks and routine. Therefore, the ALJ was required to consider

---

[44] SSA R., Doc 14-7, p. 490; SSA R., Doc. 14-2, p. 27.

[45] SSR 85-15, 1985 WL 56857, at *4. In fact, the structure of Dr. Bowman's opinion suggests he did not incorporate Plaintiff's limitations in his conclusion that she could work in a simple environment. Dr. Bowman opined that claimant could "make simple work related decisions" but immediately follows this with the caveat that she "may have difficulty adapting to changes in routines and problem solving accordingly." SSA R., Doc. 14-7, p. 490. Dr. Bowman's conclusion thus appears not to incorporate the described limitations.

[46] 1996 WL 374184, at *7.

[47] This contention is all the more difficult to credit because the Commissioner is happy to permit the ALJ to rely on Dr. Bowman's opinion that Plaintiff "*may* be able to work in an environment with simple demands." SSA R., Doc. 14-7, p. 490 (emphasis added); Br. of the Comm'r, Doc. 20, at 8.

[48] *See Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) ("But Dr. Valette did not assign any functional limitations to Ms. Paulsen other than to mention that Ms. Paulsen '*probably* has difficulty with concentration and remembering because of attention problems.' " (citation omitted) (emphasis in original)); *Diana Lynne L. v. Saul*, 2019 WL 5821337, at *3 (D. Kan. 2019) ("[M]erely speculating on possible difficulties without opining on functional limitations does not require consideration of the 'opinion.' " (citation omitted)).

the credible limitations to Plaintiff's ability to adapt to changes assessed by Dr. Bowman and erred by failing to do so.

**IT IS THEREFORE ORDERED** that the Decision of the Commissioner is hereby **REVERSED**, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED.**

This case is now closed.

Dated this 4th day of October, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE